ADKINS, RUSSEL ET AL., APPELLANTS, *v.* HAMAN C. LEWIS, RESPONDENT.

MORTGAGEE IN POSSESSION MAY RECOVER FOR REPAIRS.—A mortgagee in possession is entitled to an allowance for necessary repairs in his account of rents and profits.

EQUITY—VALIDITY OF A MORTGAGOR'S TITLE CANNOT BE QUESTIONED, WHEN.—A grantee, in a deed absolute on its face, but intended as a mortgage, who has conveyed the mortgaged premises to a *bona fide* purchaser, will not be permitted, in an action brought by the mortgagor to recover the value of the property conveyed, to show that the mortgagor's title was invalid, and that the legal title had been bought in by such purchaser.

APPEAL from Benton County.

This was a suit in equity for an accounting and settlement for rents and profits received by respondent as a mortgagee in possession, and to compel a reconveyance of the mortgaged premises.

The appellants, Adkins and wife and William J. Russel, being the owners of a one-half interest in two hundred and twenty acres of land, mortgaged the same to respondent, to secure, as the complaint alleged, the payment of $634.54, loaned by respondent to appellant William J. Russel. The mortgage was in the form of a deed absolute on its face. At the date of its execution the legal title was in Russel. Adkins and wife joined in the mortgage on account of some real or supposed title held by them in the premises, the character of which does not appear.

The remaining one undivided half interest in the two hundred and twenty acre tract was owned by one Wood. At the date of the mortgage Wood and the appellants were in possession of the mortgaged premises as equal tenants in common, and they so continued for about one year afterwards, when the respondent Lewis bought Wood's interest, and entered into possession. The complaint alleges that at the time of such entry respondent ordered appellants off the premises, that they surrendered their possession to him, and that he has remained in such possession ever since, and that while in such possession he sold a portion

of the tract to one Williams, who became a *bona fide* purchaser of the same.

The answer of respondent admits that the conveyance in question was to secure the payment of the sum of money mentioned in the complaint; denies, however, that it was only for that purpose, but alleges that said mortgage was executed in part to indemnify respondent against a contingent liability as an obligor upon a certain bond executed by one of appellants; and it denies that respondent took possession, or has used or occupied the premises in question, except as the owner of the undivided one-half interest bought of Wood. It is further claimed by respondent that appellants' title to that part of the mortgaged premises conveyed by respondent to Williams was invalid, and that the legal title had been bought in by Williams.

The court below decreed a reconveyance of the mortgaged premises—except that part of the same conveyed to Williams—to appellants, upon payment by them to respondent of $1130.64, from which decree this appeal is taken.

*R. S. Strahan and John Kelsay,* for Appellants.

*W. W. Thayer and F. A. Chenoweth,* for Respondent.

By the Court, SHATTUCK, J.:

Several questions have been discussed upon the argument which, upon the view we take of the case, it is unnecessary to decide.

The first question to settle is, what was the nature of Lewis's use and occupation of the land conveyed to him by the deed in question? If he held as tenant in common with Russel, he is not liable to account in this suit for rents and profits; but he is so liable if his possession was as Russel's mortgagee. It appears from the evidence that Wood and Russel before, and for about a year after the execution of this deed by Russel and Adkins to Lewis, had been in possession together, as equal tenants in common, Wood owning an undivided half, and joining with Russel in cultivating the land, and sharing with him the crops. In November,

1870, more than a year after his deed from Russel, Lewis bought out Wood and took a deed from him of his undivided half, and then entered into possession and ordered Russel off the premises, claiming that he had bought out "*all the heirs,*" etc., and declaring his purpose to hold sole possession. Russel surrendered to him the possession, and Lewis has used and occupied as sole claimant since that time, taking all the rents and profits. Upon these facts Lewis cannot be allowed to say that he claimed and used this land solely by virtue of his deed from Wood, and merely as tenant in common. He evidently referred his right as well to the deed from Russel as to the deed from Wood, and although a tenant in common he should in justice account, as mortgagee, for half the rents and profits.

The next question is his claim for repairs and improvements. Lewis, while in possession, appears to have built new fences and made general repairs. There is no question about the right of a mortgagee in possession, to an allowance for necessary repairs, to be allowed in stating his account of rents and profits. If these fences, so built by Lewis, can be classed as necessary repairs, he should be allowed for them. The evidence shows that the new fences inclosed and protected an exposed portion of the cultivated field, and contributed to the security and preservation of the whole crop. I think they should be regarded as necessary repairs, and Lewis should be allowed one-half of the amount expended by him, as well for the new fences as in general repairs.

The next question and the one most controverted is the amount for which Lewis should be charged on account of the parcel of land sold to Martin Williams. Shall he be held to account for simply what he received from Williams, or shall he be charged with what the land might have brought with its reasonable value? This must be determined by the character which he is held to sustain as grantee under the absolute deed. By reason of the parol defeasance he was a mortgagee beyond question, and by his own admissions in the pleadings he took the deed and held the land merely as security. By the absolute deed he had been

invested by Russel with a power of absolute control over the land, and as far as strangers could be supposed to know, he had full power to dispose of the land at pleasure. A sale by him to a *bona fide* purchaser would deprive Russel of any remedy by way of redemption and prevent him, on payment of the mortgage debt, from being restored to his former position. Now, as far as this evidence discloses the facts, Williams was a *bona fide* purchaser and Russel has no longer any right to redeem this parcel. It further appears that Russel, being advised of Lewis's purpose to sell this parcel, objected and requested Lewis to keep this tract subject to his right to redeem. But Lewis told him to "stand aside," he was going to make something out of this land. Under these circumstances Lewis is bound to account as a trustee—should be required as mortgagee to restore the pledge intact, or account for the value. The charge against him then on this account is not merely the one hundred dollars, which he alleges was all he received from Williams, but must be the reasonable value of the tract. He claims, however, that the title was imperfect and that Williams held a permanent claim. It is true the evidence shows that the deed under which Russel held this parcel, was imperfect and conveyed no legal title, and that Williams had, for one hundred dollars, bought in the claim of Russel's vendors. But there is no evidence that Russel could not have procured for his own benefit a confirmation of his title upon as easy terms as Williams had got it, nor does it appear that Lewis could not have procured this support of his mortgagor's title for the same amount that Williams paid for it. It is not a justification for Lewis, to say that Russel had no good title to this tract. Imperfection of the title did not justify his placing it beyond Russel's power to get the title confirmed. Equity required him to restore the land, without regard to the condition of the title, in no worse condition than he received it, so far as his own acts could affect it. Had Lewis bought in the outstanding title and got the land partitioned in confirmation and in support of Russel's title, it would be just and according to the general practice in equity to allow him for the expense of so doing, especially if,

Russel's title had been assailed or questioned by the holder of the outstanding claim. Inasmuch as Martin Williams has done this, and we can estimate the cost of it, it is reasonable that Lewis should be allowed for it, as if he had done it himself, and the amount for which he should be charged on account of this item should be the price for which Williams sold the land, less what he paid the Kennedys for the outstanding title, and what would be a reasonable allowance for partition.

In accordance with these views, the decree of the court below should be modified.